UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mark and Linda Lessard

          v.                              Civil No. 06-cv-423-JD

Wilton-Lyndeborough
Cooperative School District


O R D E R

     Mark and Linda Lessard seek judicial review, under the
Individuals with Disabilities in Education Act ("IDEA"), of the
decision of the New Hampshire Department of Education that
approved the Individual Education Plan ("IEP") and educational
placement of the Lessards' daughter, S.L., offered by the Wilton-
Lyndeborough Cooperative School District ("District").  The
Lessards' claims arise from their daughter's 2005-2006 school
year.  The parties agree that the decision in Lessard v. Wilton-
Lyndeborough Coop. Sch. Dist., 518 F.3d 18 (1st Cir. 2008), does
not resolve this case.[1]

_____

     [1]In that case, the Lessards challenged the District's IEP
for S.L.'s 2004-2005 school year.  The hearing officer's decision
in favor of the District was affirmed by the district court,
Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 2007 WL 1221103
(D.N.H. Apr. 23, 2007), and on appeal, Lessard, 518 F.3d at 31.
The Lessards' petitions for rehearing and for rehearing en banc
in Lessard, id., were denied in March of 2008.

Background

S.L., who was nineteen years old at the time at issue in this case, was a student with a disability within the meaning of the IDEA due to the effects of cerebral palsy, mental retardation, left hemiparesis, leg length discrepancy, a seizure disorder, and scoliosis.  S.L.'s IEP team held six meetings from April through September of 2005 to formulate an IEP for the 2005-2006 school year.  The Lessards were dissatisfied with parts of the proposed IEP and also opposed continuing S.L.'s placement at Crotched Mountain Rehabilitation Center ("CMRC").  The parties did not reach an agreement on S.L.'s IEP or her placement for the 2005-2006 school year.

S.L. had attended CMRC since 2001, and she began the 2005-2006 school year there.  S.L. experienced behavior problems during 2005, and the Lessards believed that her placement at CMRC was the cause.  They also believed that CMRC was not an appropriate placement for S.L.  The Lessards asked the District to change S.L.'s placement to a home and community based program. The District offered placements at CMRC or the Merrimack Education Center, but no agreement was reached.  In late December of 2005, the Lessards removed S.L. from CMRC.

In January of 2006, the District asked for a due process hearing, which was held on March 13 and March 31, 2006.  Peter

2

Foley served as the hearing officer.  Foley issued a decision on
July 17, 2006, in which he concluded that the District's proposed
IEP and S.L.'s placement at CMRC for the 2005-2006 school year
were appropriate.  The Lessards filed this action for review of
the decision and seek compensatory education for S.L.

## Standard of Review

Under the IDEA, the "court reviews the administrative
record, which may be supplemented by additional evidence from the
parties, and makes an independent ruling based on the
preponderance of the evidence."  Lt. T.B. ex rel. N.B. v. Warwich
Sch. Comm., 361 F.3d 80, 83 (1st Cir. 2004) (internal quotation
marks omitted); accord Mr. I. ex rel. L.I. v. Me. Sch. Admin.
Dist. No. 55, 480 F.3d 1, 5 (1st Cir. 2007).  "[J]udicial review
falls somewhere between the highly deferential clear-error
standard and the non-deferential de novo standard."  Lessard, 518
F.3d at 24.  The court "exercises its discretion, informed by the
record and by the expertise of the administrative agency and the
school officials, as to how much deference to afford the
administrative proceedings."  Sch. Union No. 37 v. Ms. C., 518
F.3d 31, 35 (1st Cir. 2008).  The party challenging the hearing
officer's decision bears the burden of proving that the decision
is wrong.  Id.

<u>Discussion</u>

The Lessards contend that the District committed procedural violations during the IEP process, that the proposed IEP was not appropriate, and that S.L.'s placement at CMRC was not appropriate.  The Lessards seek an award of compensatory educational benefits for S.L.  The District asks the court to affirm the hearing officer's decision.

A.  <u>Procedural Violations</u>

The Lessards identify eight procedural issues that pertain to S.L.'s 2005–2006 IEP and her placement at CMRC:  (1) failure to complete an IEP prior to the 2005–2006 school year, (2) failure of the IEP team to determine what evaluation data were needed, (3) failure to provide an appropriate evaluation of S.L., (4) failure to consider the results of independent evaluations, (5) failure to ensure parental involvement in the IEP process, (6) failure to provide prior written notice of decisions denying parental requests, (7) failure to have necessary team members attend meetings, and (8) failure to provide appropriate meeting notices.

In his decision, the hearing officer stated that "a significant portion of the hearing evidence involved [the Lessards'] claim that the Team Meeting process was seriously

4

flawed in the areas of team membership and parent participation."
R. Vol. XXIV at 07266.  He found that the record showed "that the
team meeting process involved a lengthy, detailed review and
discussion of the proposed IEP as well as the consideration, and
at times adoption of the concerns and opinions presented by or on
behalf of the School District and the [Lessards]."  Id.  He also
found that significant friction existed between the Lessards and
the District and that at times the District "did not always run
the process smoothly."  Id.

    As to most of the procedural issues the Lessards raised, the
hearing officer found those issues were "effectively addressed in
the School District's Post-Hearing Brief."  Id.  He also found,
however, that the District failed to properly notify the Lessards
as to who would attend each team meeting and failed to give the
Lessards prior written notice of its adverse decisions.[2]  The
hearing officer concluded, however, that those failings did not
violate the IDEA.

    The District contends that the first issue, the District's
failure to complete an IEP before the 2005-2006 school year, was
waived because it was not raised during the administrative

---

[2]Based on the hearing officer's discussion of the issue, the
failure to notify the Lessards of who would attend team meetings
is an issue about having necessary team members present.

proceedings.  The District disputes that procedural deficiencies occurred and also contends that any procedural deficiencies did not violate the IDEA.

A school district's failure to follow required procedures constitutes a violation of the IDEA "only if the procedural inadequacies – (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process . . . ; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).  A free appropriate public education ("FAPE") "means special education and related services that––(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate . . . education in the state involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title."  20 U.S.C. § 1401(9); see also C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 284 (1st Cir. 2008).


1.  Timely IEP

The District asserts that the Lessards did not raise the issue that the IEP was not complete at the beginning of the 2005–

2006 school year during the administrative proceedings.  The
District also asserts that the delay did not significantly impede
the Lessards' opportunity to participate or cause a deprivation
of educational benefits.  The Lessards do not address the
question of whether the issue was raised below but argue that the
delay in proposing the IEP violated the IDEA.

The IDEA requires exhaustion of all claims and issues in the
due process hearing.  Rafferty v. Cranston Pub. Sch. Comm., 315
F.3d 21, 25 (1st Cir. 2002).  Exceptions exist if the plaintiff
can show either that raising the claim or issue would be futile
because of the agency's unlawful policy or practice or that the
administrative remedies were inadequate.  Id.  Absent an
applicable exception, failure to exhaust bars review of claims
that were not raised in the administrative process.  Id. at 26.

The Lessards' prehearing filings do not include the issue of
the timeliness of the 2005–2006 IEP.  The Lessards have not
provided evidence to show that the issue was raised during the
administrative proceedings and have not addressed the exceptions
to the exhaustion requirement.  Therefore, the issue was waived
and will not be considered here.

2.  Evaluations

Three of the Lessards' allegations of the District's

7

procedural failings pertain to evaluations of S.L.  The hearing officer did not address these issues separately.  In their Decision Memorandum, the Lessards address the evaluations issues briefly, stating only that the District failed to provide evaluations of S.L. for behavioral intervention and literacy skills, despite the Lessards' requests.  They further state, in conclusory fashion, that the District "thereby hindered the development of her program in these areas."  Pl. Brief at 9.

The issues of whether or not the District provided sufficient evaluations or considered independent evaluations of S.L. are not sufficiently developed to permit review.  In addition, although the Lessards assert that the lack of evaluations hindered the development of S.L.'s program, that is not enough to show that she was deprived of a FAPE or educational benefits under the IDEA.  Therefore, the administrative decision is affirmed on the issues pertaining to evaluations.

3.  <u>Parental Involvement</u>

The Lessards also contend that the District violated the IDEA by failing to ensure parental involvement in the decision-making process and failing to provide appropriate meeting notices.  In particular, they contend that although S.L.'s IEP team met eight times, "there was little meaningful team

discussion about the content of her 2005-2006 IEP."[3]  Pl. Mem. at 7.  The Lessards assert that the school representatives did not listen to Mrs. Lessard's concerns and refused to consider the issues she raised.

The IDEA requires the IEP team to consider the parents' concerns about the education of their child.  <u>Winkelman v. Parma City Sch.</u>, 127 S. Ct. 1994, 2004 (2007) (citing 20 U.S.C. § 1414(d)(3)(A)(ii)).  While parents are entitled to have input, however, they are not entitled to do the school system's work. <u>Lessard</u>, 518 F.3d at 27.  In addition, parents may have a meaningful opportunity to participate in the IEP process even when the team's decision is contrary to the parents' wishes. <u>Hjortness v. Neenah Joint Sch. Dist.</u>, 507 F.3d 1060, 1065-66 (7th Cir. 2007).

The record establishes that Mrs. Lessard attended and participated in the IEP team meetings.[4]  She presented her ideas, issues, and concerns.  Although the District did not adopt or implement all of her suggestions, they heard her point of view. The Lessards have not shown that they were denied participation

---

[3]While the Lessards refer to eight meetings, the hearings officer stated that the IEP process began in April and ended in September of 2005 and included six team meetings.

[4]The Lessards do not suggest that Mr. Lessard was excluded from the meetings.

in the IEP process in violation of the IDEA.

4.  <u>Team Meeting Participants</u>

As is noted above, the hearing officer found that on some occasions the District failed to have necessary team members attend meetings but concluded that no IDEA violation occurred as a result.  In particular, the hearing officer referred to the June 14, 2005, meeting when a psychologist was scheduled but missed the meeting.  The hearing officer concluded that no harm occurred, however, because the psychologist did attend the next meeting.

The IDEA requires that an IEP team include the parents of the disabled student, at least one of the student's teachers, a qualified and knowledgeable representative of the school district, and someone "who can interpret the instructional implications of evaluation result," who may be one of the other team members.  § 1414(d)(1)(B).  In addition, the team may include other individuals with knowledge or expertise related to the student and, if appropriate, the student herself may attend meetings.  <u>Id.</u>

Mrs. Lessard's meeting notes indicate that she raised an issue at the meeting held on April 14, 2005, about a notice process that would ensure attendance of the necessary people at

meetings.  Mrs. Lessard appears to have been concerned that
meetings had been delayed because necessary participants were not
available.  The issue was discussed, and the response was that
people were notified of meetings and asked to RSVP to confirm
their attendance.

The Lessards also complain that team members sometimes
arrived late to meetings or left early, that the psychologist
scheduled to attend one meeting did not attend, and that they
were not always notified about who would attend meetings.
Although they provide evidence that team members did arrive late
and leave early, they have not shown that attendance had any
impact on S.L.'s right to receive a FAPE, their participation in
the IEP process, or S.L.'s educational benefit.  As the hearing
officer pointed out, the psychologist who missed a meeting
attended the next meeting, so that no violation of the IDEA
occurred.  Although the Lessards assert that their lack of notice
of meeting attendees impaired their ability to prepare for
meetings, they provide no specific problems that arose or
evidence that a violation of the IDEA occurred.

5.  <u>Prior Notice of Adverse Decisions</u>

The hearing officer concluded that the District failed to
provide the Lessards with prior notice of adverse decisions but

that no harm resulted so that no violation of the IDEA occurred.
In their memorandum here, the Lessards merely state that they
were not provided prior notice without any development of the
issue or evidence of an IDEA violation that resulted from lack of
prior notice.  Therefore, the Lessards did not carry their burden
on this issue.


B.  Substantive Violations

     The Lessards challenge the 2005-2006 IEP as inappropriate,
arguing that it was not reasonably calculated to provide S.L.
educational benefits because it lacked an adequate literacy
program, an adequate transition plan and services, and an
adequate behavior plan.  The Lessards also contend that S.L.'s
placement at CMRC was inappropriate under the IDEA.  The District
defends the 2005-2006 IEP and S.L.'s placement at CMRC.

     The District implemented the disputed 2004-2005 IEP for the
first time in March of 2005 after a hearing officer ruled that it
was legally appropriate.  In April, S.L.'s IEP team and her
parents began the process of developing her 2005-2006 IEP.  The
draft IEP was revised during the meeting process, and the last
proposed IEP was presented on September 15, 2005.  Mrs. Lessard
refused to consent to the proposed IEP, leaving the 2004-2005 IEP
in place until the Lessards removed S.L. from CMRC in December of

2005.

Based on the evidence submitted before, during, and after
the hearing, including testimony at the hearing, which now fills
twenty-five bound volumes, the hearings officer concluded that
the IEP proposed for the 2005-2006 school year and S.L.'s
placement at CMRC were legally appropriate.  The Lessards
challenge the hearing officer's conclusions.  The District
supports the decision.

### 1.  Educational Benefits

To provide a FAPE as required by the IDEA, an IEP must be
"reasonably calculated to enable the child to receive educational
benefits."  Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S.
176, 207 (1982).  "It is worth emphasizing that the obligation to
devise a custom-tailored IEP does not imply that a disabled child
is entitled to the maximum educational benefit possible."
Lessard, 518 F.3d at 23.  "An IEP need only supply some
educational benefit, not an optimal or ideal level of educational
benefit, in order to survive judicial scrutiny."  Id. at 23-24.

The Lessards contend that the primary deficiency of the
2005-2006 IEP was its lack of a viable literacy program.
Although S.L. was nineteen at the start of the 2005-2006 school

year, she could not read.[5]  The District states that S.L. was
progressing at a level commensurate with her abilities and
disabilities.

At CMRC, S.L. was instructed in reading through a standard
multisensory program.  Robert Kemper, Ph.D., a psycholinguist who
evaluated S.L. at her parents' request, believed that S.L. could
learn to read at a higher level if a different multisensory
reading program were implemented.[6]  He recommended the Lindamood
Phonemic Sequencing ("LiPS") program.

Although the District initially planned to continue the
multisensory reading program that was already being used at CMRC,
in the course of considering S.L.'s 2005-2006 IEP, the District
had CMRC's licensed speech pathologist trained in the LiPS
program.[7]  The IEP was then redrafted to include the LiPS

_____

[5]While S.L.'s teachers reported that she could read a list
of one syllable words, testing results indicated she could not
read.

[6]The Lessards do not appear to dispute that S.L. was
achieving at an appropriate level given her I.Q. and other
disabilities.  Based on Kemper's opinions, however, they expected
S.L. to achieve at a higher level.  The District points out that
Kemper lacked the expertise and background to support his
opinions about S.L.'s abilities.

[7]Kemper first recommended the LiPS program in the spring of
2004.  In his report following his second evaluation of S.L., on
June 10, 2005, Kemper again recommended the LiPS program and then
added a new requirement that the LiPS the instructor have at

program.  Mrs. Lessard believed that the speech pathologist was not sufficiently trained in the LiPS program because she lacked hands-on experience in administering the program and refused to allow the speech pathologist to work with S.L.  Mrs. Lessard also had indicated that a different program, the Davis Reading Program, would be better for S.L.[8]  S.L. continued to be taught under the original multisensory program while she was at CMRC.[9]

The hearing officer found that the District responded appropriately to the Lessards' request that S.L. be instructed with the LiPS program.  He further found that because the CMRC speech pathology specialist was trained in the LiPS program, the Lessards' additional experience requirement was not sufficient to invalidate the LiPS program offered in the IEP.  As to the alternative Davis program, the Hearing Officer concluded that the Lessards had not shown that the multisensory program then being used at CMRC was inappropriate.  He held that S.L. was receiving educational benefits from the CMRC reading program.

For purposes of review, the Lessards appear to argue, in

---

least one year of experience administering the LiPS program.

[8]S.L. is currently working with another provider who uses the Davis program.

[9]Under the "stay put" provision of the IDEA, the 2004-2005 IEP remained in place until December of 2005 when S.L. left CMRC.

part, that the District's reading program used at CMRC during the 2004-2005 school year was inadequate.  The IEP for 2004-2005 is not at issue here.  In addition, the question of the adequacy of the 2004-2005 IEP has been resolved in favor of the District. Lessard, 518 F.3d at 28-29.

The Lessards also contend that the 2005-2006 IEP was inadequate because it did not provide for the LiPS program to be administered in a manner they believed was necessary for S.L. to benefit from the program.  In particular, they argue that the LiPS program has to be administered by a provider who at a minimum was trained and had at least one year of experience in working with the LiPS program.  They also required one-on-one instruction for S.L..  They contend that the 2005-2006 IEP lacked goals and objectives to implement the LiPS program.

School districts are authorized to select among competing programs or methodologies that are most suitable for a child's needs.  Lessard, 518 F.3d at 28.  It is difficult, therefore, for parents to succeed on a claim, under the IDEA, that their recommended program would be a better choice.  Id.  "Where, as here, a school system develops an IEP component in reliance upon a widely-accepted methodology, an inquiring court ought not to condemn that methodology ex post merely because the disabled child's progress does not meet the parents' or the educators'

expectations."  Id. at 29.

The hearing officer correctly concluded that the District developed an IEP reading plan based on accepted methodologies and that the Lessards' insistence on additional training and other programs was asking for a maximum benefit that is not required under the IDEA.[10]  Therefore, the 2005-2006 IEP sufficiently provided for S.L.'s educational benefit in reading.

2.  Transition Plan

The IDEA requires that beginning when a disabled child turns sixteen, her IEPs must include goals "based on age appropriate transition assessments related to training, education, employment, and, where appropriate independent living skills."  § 1414(d)(1)(A)(i)(VIII).  The IEP must also include "the transition services (including courses of study) needed to assist the child in reaching those goals."  Id.  The term "transition services" is defined as "a coordinated set of activities . . . designed to be within a results-oriented process, that is focused on improving the academic and functional achievement of the child . . . to facilitate the child's movement from school to post-

---

[10]It is also interesting to note that the Lessards did not use the LiPS program for S.L. after she left CMRC.  Instead, S.L. is being instructed in the Davis program by a non-specialist.

17

school activities . . . ."  20 U.S.C. § 1401(34).  For purposes of assessing the adequacy of an IEP with respect to its transition plan, transition services are viewed together, taking into account the child's needs, and the IEP is evaluated as a whole to determine whether it is reasonably calculated to provide educational benefits to the child.  Lessard, 518 F.3d at 30.

The hearing officer stated that the Lessards had not identified a specific substantive problem with the transition services proposed in the 2005–2006 IEP.  The hearing officer held that the proposed 2005–2006 IEP included "a significant increase in services in the area of pre–vocational skills" and that the Lessards did "not seriously object to the amount of time devoted to pre–vocational services, or to the prevocational [sic] goals and objectives in the draft IEP."  R. Vol. XXIV, at 07265.

For review, the Lessards argue that the transition services provided in the 2005–2006 IEP were inadequate because they were not individualized and did not have appropriately intensive community–based programing.  The parties agree that the transition plan proposed in the 2005–2006 IEP is the same as the plan in the 2004–2005 IEP.

The Lessards challenged the transition plan in the 2004–2005 IEP on the same grounds they raise here, contending that it was not sufficiently personalized to S.L. and that it should have had

18

"'relatively intense services in community-based setting.'"   Id.
at 29.  On appeal, the court concluded that "the district court
did not clearly err in finding the panoply of transition services
adequate."  Id. at 30.  The court held that the Lessards could
not attack the transition plan apart from the IEP as a whole and
also held that although the field trip schedule might not be
ideal for providing community-based services, it was sufficient
to satisfy the IDEA.  Id.

The issues the Lessards raise to challenge the proposed
transition services have been resolved in favor of the District
in the context of the 2004-2005 IEP.  They do not challenge the
hearing officer's finding that the 2005-2006 IEP included
additional services.  Therefore, the hearing officer's conclusion
that the proposed transition plan was not substantively flawed
was correct.

The Lessards now appear to argue a new theory, that the
District was required to articulate a new transition plan for the
2005-2006 IEP rather than rely on the same plan that was used in
the 2004-2005 IEP.  That issue, however, does not appear to have
been raised during the due process proceeding and cannot be
raised for the first time here.  In addition, because transition
services are assessed in the context of the IEP as a whole, and
the hearing officer found that the proposed IEP included more

19

pre-vocational services, their new argument would not succeed.

###### 3.   Behavior Plan

The Lessards contend that the behavior plan proposed in the
2005-2006 IEP was procedurally defective and substantively
inadequate.  They argue that it was presented without input from
the IEP team or the family, in violation of the IDEA's IEP
requirements.  As to the substance of the plan, they contend that
it was outdated, inaccurate, and inappropriate because it relied
on restraint rather than positive interventions, did not identify
S.L.'s problem behaviors, and did not describe triggers for her
negative behavior.  They also contend that the CMRC staff members
were not implementing the plan but instead were using
inappropriate punishment and reinforcements.

The hearing officer stated that the Lessards "offered a
series of conclusory allegations that the behavior plan was
'inappropriate' and 'inconsistently administered.'"   Vol. XXIV
at 07264.  He found that the behavior plan had been modified and
that the District had shown that it was willing to modify the
plan when necessary, which had had positive results.  He noted
that although changes could have been made more quickly and that
mistakes may have occurred in implementing the plan, the District
had made a good faith effort to address S.L.'s behavior issues.

20

If a disabled child's "behavior impedes the child's learning or that of others, [the IEP team shall] consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior . . . ."  20 U.S.C. § 1414(d)(3)(B)(I).  Absent circumstances not raised in this case, however, the IDEA does not require a behavior plan or prescribe substantive requirements for one if it is included in the IEP. Lessard, 518 F.3d at 25; Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. no. 221, 375 F.3d 615 (7th Cir. 2004). Therefore, the Lessards' arguments that the behavior plan proposed for the 2005-2006 IEP was substantively deficient cannot succeed.

The Lessards also argue that the behavior plan violated the IDEA because a proper procedure was not followed for its development and implementation.  It does not appear that they raised the procedural issues during the administrative process. In addition, because a behavior plan was not required and the IDEA does not include procedural requirements for developing a plan, the Lessards have not shown that the process followed by the District violated the IDEA.  Therefore, the administrative decision is affirmed on the issue of the behavior plan.

21

C.  Placement

The Lessards contend that S.L.'s proposed placement at CMRC
for the 2005-2006 school year violated the IDEA because it was
not the least restrictive environment in which she could receive
educational benefits, because it caused harm, and because it
would not provide her with functional skills she needed.  The
hearing officer concluded that it was not necessary to put S.L.
into a home and community based program to provide her with
appropriate education benefits and that the home and community
based program proposed by her parents lacked detail of how it
would work and would be a more restrictive environment than CMRC.
The District supports the hearing officer's decision.

1.  Least Restrictive Environment

Under the IDEA, disabled children are to be educated in the
least restrictive environment that meets the requirements of
educational benefit.  20 U.S.C. § 1412(a)(5); Kathleen H. v.
Mass. Dep't Educ., 154 F.3d 8, 11 (1st Cir. 1998); Amann v. Stow
Sch. Sys., 982 F.3d 644, 650 (1st Cir. 1992); J.W. v. Contoocook
Valley Sch. Dist., 154 F. Supp. 2d 217, 232 (D.N.H. 2001).
States must provide a continuum of alternative placements to meet
the requirement of education in the least restrictive
environment.  34 C.F.R. § 300.115.  New Hampshire's regulations

22

implementing the IDEA require the least restrictive placement and provide a table of educational placements which shows that home instruction is more restrictive than a full-time special day school such as CMRC.  N.H. Code Admin. R. Ed. 1115.04; <u>Id.</u> Table 1100.2.

In the administrative proceeding, the Lessards' "main concern" was that S.L. "would benefit more from receiving prevocational services more often in an 'out in the community' setting."  R. Vol. XXIV at 07265.  The hearing officer stated that "the community-based program issue is really a dispute about the methodology for delivery of the prevocational services [S.L.] needs to prepare her to function outside of the school environment."  <u>Id.</u>  The hearing officer noted that in addition to his finding that home instruction was not necessary to provide appropriate education benefits, "the primary delivery of educational services at home in conjunction with community-based prevocational program would be a more restrictive alternative than placement at [CMRC] as proposed by the School District." <u>Id.</u>

The Lessards argue that CMRC is more restrictive than their proposed home instruction because CMRC should be viewed as a full-time residential placement or as a hospital or institutional placement, which are more restrictive than a full-time special

day school on the continuum table.  In support of that theory,
they contend that because many of the other students at CMRC were
residential students with significant disabilities, it fit a more
restrictive category.  The Lessards' argument is not persuasive.

While S.L. was a student at CMRC, she had contact with many
providers and students at CMRC.  Because she was a day student,
she also had daily contact with her family and the community
outside of CMRC.  As the District points out, those contacts,
opportunities, and experiences provided a much broader
environment than home-based instruction could offer.  CMRC was a
less restrictive environment than the home instruction the
Lessards proposed.

### 2.   Educational Benefit

The Lessards assert that S.L.'s placement at CMRC failed to
provide her with educational benefit and instead caused her harm.
They describe S.L.'s aggressive and angry behavior, which at
times was so severe as to require police intervention.  They
contend that S.L.'s behavior was caused by her hostility toward
and fear of CMRC.  They also argue that CMRC staff handled S.L.
in inappropriate ways.

In his decision, the hearing officer cited evidence that
S.L. "increased her basic work knowledge and career awareness"

with the instruction and services offered at CMRC.  R. Vol. XXIV
at 07265.  He found the opinions of the CMRC staff credible that
it was not necessary to put S.L. into home instruction to provide
her with appropriate educational benefits.  Therefore, he found
the CMRC proposed placement was appropriate.

The Lessards provide evidence that S.L. engaged in extreme
and aggressive behavior while she was a student at CMRC, which
they interpret as evidence that S.L. did not want to attend
CMRC.[11]  They have not shown, however, that CMRC caused the
behavior or that the CMRC placement caused her harm.[12]  Further,
the hearing officer credited the opinions of staff at CMRC that
S.L. was making progress.  Therefore, the Lessards have not shown
that the offered placement at CMRC was inappropriate.


D.  Compensatory Educational Services

If a school system has deprived a disabled student of a
FAPE, "a court may require 'compensatory education' in the form
of 'further services, in compensation for past deprivations.'"
Mr. I. v. Me. Sch. Admin. Dist. No. 55, 480 F.3d 1, 25 (1st Cir.

---

[11]The record indicates that S.L.'s behavior improved after
she succeeded in having her mother withdraw her from CMRC.

[12]Neither Mrs. Lessard's beliefs nor counsel's
characterizations of events are sufficient to establish the
reason for S.L.'s behavior.

2007).  Because the hearing officer's decision is affirmed in all respects, the court need not consider the question of appropriate relief.

Conclusion

For the foregoing reasons, the decision of the hearing officer for the New Hampshire Department of Education, dated July 17, 2006, is affirmed.

The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.


                                        /s/Joseph A. DiClerico, Jr.
                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

August 14, 2008

cc: Jennifer A. Eber, Esq.
    Richard L. O'Meara, Esq.
    Eric R. Herlan, Esq.
    Katherine W. Bubar, Esq.